UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| KAMA CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | 2:10-cv-01425 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| CITY OF TEMPE, TEMPE POLICE DEPARTMENT, SGT. MICHELLE HATCHER, and SGT. SHELLY VANETTEN, | ) ) ) ) | |
| | ) | [Re: Motion at Docket 16] |
| | ) | |
| Defendants. | ) | |
| | ) | |

I. MOTION PRESENTED

At docket 16, defendants City of Tempe, the Tempe Police Department, Sergeant Michelle Hatcher and Sergeant Shelly Van Etten move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. At docket 22, plaintiff Kama Carroll opposes the motion. Defendants reply at docket 23. Oral argument was not requested, and it would not assist the court.

## II.  BACKGROUND[1]

In November 2008, Kama Carroll, who has over twenty years of service as a correctional officer with the State of Nevada, applied for the position of jail administrator with the Tempe City Jail.  After Ms. Carroll interviewed for the position, Tempe Police Department ("TPD") personnel advised her that she was "a top candidate" for the position and should expect to receive a formal offer.[2]  Shortly thereafter, TPD personnel informed Carroll that the City of Tempe and TPD could not fund the jail administrator position and therefore would not immediately fill the position.  Instead, the City of Tempe and TPD offered Ms. Carroll employment as a "line" detention officer.  Ms. Carroll accepted the offer.

Ms. Carroll commenced employment as a detention officer in November 2008.  Sergeant Jack Richards was her immediate supervisor.  Shortly after beginning work at the Tempe City Jail, Ms. Carroll observed that Sergeants Michelle Hatcher and Shelly Vanetten, who also served as Carroll's supervisors, acted "in a rude, offensive, obnoxious, and improperly sexually charged manner towards other employees and the prisoners," including using profanity towards detention officers and prisoners.[3]  Hatcher and Vanetten's behavior offended Carroll.

---

[1] For purposes of this Rule 12(b)(6) motion, the factual allegations in plaintiff's complaint are taken as true and construed in the light most favorable to plaintiff.

[2] Doc. 1 at p. 6.

[3] *Id.* at p. 7.

On one occasion, Carroll witnessed Vanetten "intentionally spraying whipped cream into the crotch of [a] male line [detention officer.]"[4]  Carroll reported the incident to Sergeant Richards, who reported the incident to Commander Santos.  In December 2009, Carroll made a verbal complaint to Commander Santos, "advising her of the frequency of unprofessional and inappropriate conduct"[5] by Sergeants Hatcher and Vanetten.  Commander Santos summarily dismissed the complaints.

In June 2009, Carroll met with Assistant Police Chief Angel Carbajal to complain about "several distinct instances of unprofessional, inappropriate, and offensive conduct" by Hatcher and Vanetten between December 2008 and June 2009.  Carbajal told Carroll that an investigation would be completed by TPD's Internal Affairs Department ("IAD").  At Carbajal's request, Carroll sent Carbajal an e-mail outlining fifteen incidents that she believed amounted to unprofessional, inappropriate, and offensive conduct by Hatcher and Vanetten.  The e-mail was forwarded to IAD.

At a sergeants' meeting in August 2009, Commander Yenni, who had replaced Commander Santos, informed all of the TPD jail sergeants that Carroll made a complaint to IAD and warned them to be on their "best behavior" around Carroll or she might report them.  Commander Yenni further opined that Carroll had "jumped the chain of command" by going directly to Assistant Chief Carbajal.  Commander Yenni also told Hatcher and Vanetten that Carroll's IAD complaint pertained to their conduct.[6]

---

[4]*Id.*

[5]*Id.*

[6]Doc. 1 at p. 9.

Following the sergeants' meeting, Carroll began experiencing hostility from Hatcher and Vanetten, as well as other detention officers and sergeants who were friendly with Hatcher and Vanetten. The hostility toward Carroll included: Hatcher telling other employees that she did not want to be in Carroll's presence because she "might get recorded"; a message posted on a wall in the jail control room about "staff that tell on other staff"; Vanetten denying Carroll's request for leave; and Carroll feeling snubbed and excluded by several sergeants and other line detention officers.

In January 2010, Carroll met with IAD staff to inquire about the status of the investigation. Carroll subsequently received a copy of the IAD investigation report, which indicated that Hatcher and Vanetten "had engaged in improper, unlawful, and unprofessional conduct in violation of TPD policies, rules, and regulations."[7] Of the fifteen incidents Carroll reported, Hatcher was found responsible for two instances of misconduct and Vanetten was found responsible for four instances of misconduct. Carroll requested that either she or Vanetten and Hatcher be transferred to another shift. There was no action on Carroll's request for a transfer.

In February 2010, some of the supervising sergeants and line detention officers began applying a "heightened level of scrutiny" to Carroll. One detention officer, a friend of Vanetten, reported to another detention officer that Carroll was inappropriately conducting pat down searches of prisoners. Commander Dorsey, who had replaced Commander Yenni, investigated the allegations, concluded they were unfounded, and verbally reprimanded the detention officer who made the allegations. Carroll met with

---

[7]Doc. 1 at p. 12.

Commander Dorsey and repeated her complaints about the hostile work environment created by Hatcher and Vanetten and other jail employees and demanded that he do something.

In May 2010, Carroll learned that the jail administrator position for which she had applied in November 2008 was again being offered. Carroll applied for the position and attended one interview. After Commander Dorsey told Carroll that she "would not be moving forward" in the selection process for the jail administrator position, Carroll demanded that the "denial of her promotion" be documented in writing. On June 18, 2010, Commander Dorsey sent Carroll an e-mail, stating "[t]he decision to not move you forward to the next process was based on the feedback from the testing process, and more qualified candidates were selected to move forward."[8]

On July 6, 2010, Carroll filed a complaint against the City of Tempe, TPD, Hatcher, and Vanetten, alleging claims of disparate treatment - failure to promote, hostile work environment, and retaliation for engaging in a protected activity, all under Title VII of the Civil Rights Act of 1964.[9] In addition to direct and consequential damages, Carroll's complaint requests general and specific damages for pain and suffering due to intentional infliction of emotion distress, and punitive damages. Defendants now move to dismiss all of Carroll's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[8] Doc. 1 at p. 14.

[9] 42 U.S.C. § 2000e *et seq.*

## III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.[10]  A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[11]  In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[12]  Conclusory allegations of law are not entitled to an assumption of truth.[13]

To avoid dismissal under Rule 12(b)(6), a plaintiff must aver in his or her complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  In sum, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[16]

---

[10] *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[11] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[12] *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[13] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

[14] *Al-Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted)).

[15] *Iqbal*, 129 S.Ct. at 1949.

[16] *Moss*, 572 F.3d at 969.

## IV.  DISCUSSION

As a preliminary matter, defendants move to dismiss all of plaintiff's claims against defendant TPD on the grounds that TPD is a non-jural entity that is not subject to suit in its own capacity.  In support, defendants cite *Skinner v. Pinal County*[17] and *Williams v. City of Mesa Police Department,*[18] both of which held that under Arizona law a city police department is not a proper defendant.  Although not controlling precedent, these district court cases are persuasive.  "The capacity to sue or be sued is determined by the law of the state where the district court is located."[19]  The Arizona Constitution confers the right to sue or be sued on municipal corporations.[20]  In addition, Arizona Rule of Civil Procedure 17(d) provides that "[a]ctions brought by or against a county or unincorporated city or town shall be brought in its corporate name."  Thus, claims based on action by the TPD must be made in a suit against the City of Tempe.[21] Plaintiff does not oppose defendant's motion to dismiss TPD as a non-jural entity.  The court will grant defendants' motion to dismiss plaintiff's claims against TPD.

Defendants also move to dismiss plaintiff's claims under Title VII against defendants Hatcher and Vanetten in their individual capacities on the grounds that Title

---

[17] 2009 WL 1407363 (D.Ariz. 2009).

[18] 2009 WL 2568640 (D.Ariz. 2009).

[19] *Williams*, 2009 WL 2568640 at *2 (citing Fed.R.Civ.P. 17(b)(2), (3))..

[20] A.R.S. Const. Art. 14 § 1.

[21] *Williams*, 2009 WL 2568640 at *2.

VII liability does not extend to supervisors and other individual employees.[22]  In her opposition, plaintiff contends that her intention was to sue defendants Vanetten and Hatcher in their official capacities and cites *Ortez v. Washington County*[23] for the proposition that supervisors can be sued in their official capacities under Title VII.  The court need not address the conflict between the parties' cited authorities as to whether supervisory employees may be liable in their official capacities under Title VII because as discussed below the court concludes that plaintiff has failed to state a claim for relief under Title VII.

Defendants move to dismiss plaintiff's Title VII claims against the City of Tempe for failure to state a claim upon which relief may be granted.  The court considers each of plaintiff's disparate treatment, hostile work environment, and retaliation claims in turn.

**Disparate Treatment Claim**

Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[24]  To establish a prima facie claim for disparate treatment based on circumstantial evidence, plaintiff must demonstrate that 1) she is a member of a protected class; 2) she was qualified for her position and performing her job satisfactorily; 3) she experienced adverse employment actions, and 4) "similarly situated individuals outside [her] protected class were treated

---

[22]*See, e.g., Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007).

[23]88 F.3d 804, 808 (9th Cir. 1996).

[24]42 U.S.C. § 2000e-2(a)(1).

more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."[25]

Plaintiff's complaint fails to allege that she is a member of a protected class. Assuming for the sake of argument that plaintiff's membership in a protected class is based on her sex, plaintiff's complaint does not allege that she, or any other female employee, suffered an adverse employment action because of her sex. Plaintiff's complaint also fails to allege that similarly situated male employees were treated more favorably. To the contrary, plaintiff's complaint alleges that Vanetten intentionally sprayed whipped cream on the crotch of a male detention officer. For the above reasons, plaintiff has failed to state a claim for disparate treatment upon which relief may be granted.

**Hostile Work Environment Claim**

To state a hostile work environment claim under Title VII, plaintiff must allege that 1) she was subjected to verbal or physical conduct because of her membership in a protected class, 2) the conduct was unwelcome, and 3) "the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment."[26] "At the motion to dismiss stage, [plaintiff] need not support [her]

---

[25] *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

[26] *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003)).

allegations with evidence, but [her] complaint must allege sufficient facts to state the elements of a hostile work environment claim."[27]

Plaintiff's complaint fails to allege that plaintiff was subjected to verbal or physical conduct because of her membership in a protected class. Assuming plaintiff's membership in a protected class is based on her sex, plaintiff's complaint fails to make any allegations that Vanetten, Hatcher or any other co-worker harassed or subjected plaintiff to a hostile work environment because of her sex. Plaintiff's complaint instead alleges that she was subject to "insults, other verbal comments, and intimidation based upon her participating in protected activity."[28]

Plaintiff's complaint also fails to allege specific factual content allowing the court to draw the reasonable inference that defendants' alleged conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create a hostile work environment. In considering whether discriminatory conduct was severe or pervasive, the court looks to all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[29] Again, plaintiff's complaint fails to allege discriminatory conduct based on membership in a protected class. Furthermore, construing the complaint's allegations in the light most favorable to plaintiff, the complaint fails to allege sufficient

---

[27]Id.

[28]Doc. 1 at p. 16.

[29]*Kortan v. California Youth Authority*, 217 F.3d 1104, 1110 (9th Cir. 2000) (internal quotation and citation omitted).

facts to support a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment."[30]  For the above reasons, plaintiff's complaint fails to state a hostile work environment claim upon which relief may be granted.

**Retaliation Claim**

The "opposition clause" of § 704 of Title VII "makes it illegal for an employer to discriminate against an employee where the employee 'has opposed any practice made an unlawful employment practice by this subchapter . . .'"[31]  "Title VII prohibits, *inter alia*, discrimination on the basis of [race, color, religion, sex, or national origin], and retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding."[32]  To establish a prima facie claim for retaliation, plaintiff must demonstrate that 1) she was engaging in a protected activity, 2) she suffered an adverse employment decision, and 3) there was a causal link between her activity and the employment decision.[33]

Plaintiff's complaint does not allege that she opposed any discriminatory practice made unlawful by Title VII.  To the contrary, plaintiff's complaint alleges that the protected activity in which she engaged consisted of reporting "unprofessional and inappropriate conduct, harassment, disparate treatment and/or excessive force."[34]

---

[30]*Draper v/ Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998).

[31]*Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 525 (9th Cir. 1994) (quoting 42 U.S.C. § 2000e-3(a) (1981)).

[32]*Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (internal citations omitted).

[33]*Id.* at p. 526.

[34]Doc. 1 at p. 17.

Unprofessional and inappropriate conduct alone is not made unlawful under Title VII. While a hostile work environment and disparate treatment may be unlawful under Title VII, the harassment and disparate treatment plaintiff alleges in her complaint was not related to her membership in a protected class. Accordingly, plaintiff has failed to state a retaliation claim under Title VII.

Finally, defendants move to dismiss plaintiff's requests for "general and special damages for pain and suffering due to intentional infliction of emotional distress" and for punitive damages. Title VII allows a court to award compensatory damages for pain and suffering and to award punitive damages where a plaintiff establishes that the employer engaged in intentional discrimination.[35] Because plaintiff's complaint fails to state a claim for relief under Title VII, her request for compensatory and punitive damages also fails.

## V.  CONCLUSION

For the reasons set out above, defendants' motion at docket 16 to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) is **GRANTED**, and plaintiff's complaint is **DISMISSED**. The Clerk will please enter judgment for defendants.

DATED this 22nd day of December 2010.

                                            /S/
                                JOHN W. SEDWICK
                       UNITED STATES DISTRICT JUDGE

---

[35] 42 U.S.C. §§ 2000e-5(g)(1), 1981a(a)(1).